UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Teshome Sok Sameru, | Case No. 23-cv-2645 (ECT/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Lisa Stenseth, Warden, | |
| Respondent. | |

---

This matter is before the Court on Petitioner Teshome Sok Sameru's Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. 1) ("Petition") and Respondent's Motion to Dismiss (Dkt. 10) ("Motion"). The Petition and Motion have been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation. For the reasons set forth below, the Court recommends that the Motion be granted, the Petition be denied, and that no certificate of appealability be issued to Petitioner.

I.  FACTUAL BACKGROUND

A.  **Sameru's Conviction**

The State of Minnesota charged Sameru with first-degree assault and second-degree attempted murder, and he was convicted by a jury of these offenses on March 6, 2020 (Dkt. 1 at 1). *See also State v. Sameru*, No. A21-0911, 2022 WL 2297269, at *2 (Minn. Ct. App. June 27, 2022), *rev. denied* (Aug. 23, 2022), *cert. denied*, 143 S. Ct. 740 (2023). The district court sentenced Sameru to 183 months in prison. (Dkt. 1 at 1.)

B.      **Sameru Appeals his Conviction**

The Minnesota Court of Appeals Court reported the following details about the events underlying Sameru's criminal charges, as well as his trial:

> Sameru attacked his victim, A.A., during the evening of January 31, 2014, in the parking lot of an apartment building in the city of St. Paul. A.A. testified at trial that, at the time of the incident, he was returning to his home alone after giving Sameru's former girlfriend a ride from her workplace to her home. He testified that he parked his car and was walking toward the apartment building when he was struck from behind and fell. He did not see who struck him and does not remember anything that happened thereafter.
>
> Part of the attack was witnessed by another resident of the apartment building, L.T., who happened to be looking out a window of her third-floor apartment. At 9:34 p.m., L.T. called 911 and told the 911 operator that she had seen a maroon four-door car follow a car belonging to a person who lived in the building. She said that the driver of the maroon car "crept up" on the resident, turned off the car's headlights, approached the resident on foot, and "beat him." L.T. clarified that she saw the attacker's arms swing up and down approximately eight times but could not see what he was striking because her view was partially blocked by a parked vehicle. She said that the attacker had driven away two or three minutes before her call. She could not provide any identifying information about the attacker except that he was wearing dark clothing. Police officers responded to L.T.'s 911 call but could not locate a victim.
>
> Nineteen minutes later, at 9:53 p.m., L.T. called 911 again. She told the 911 operator that she had just seen the victim of the assault stagger to a bus-stop bench and then fall to the ground. She told the 911 operator where the man could be found. Police officers were dispatched to the scene again and quickly found A.A., who was transported by ambulance to a nearby hospital. He had substantial injuries to his face and skull. Emergency-room physicians determined that he was bleeding into his brain and required emergency surgery. A.A. spent weeks in the hospital before he was discharged to a rehabilitation center. At trial, more than five years after the attack, A.A.'s niece testified that A.A. had ongoing deficits to his memory, patience, and physical strength and that it was difficult for him to work or sit for an extended period of time.
>
> After the incident, police investigators spoke with Sameru's former girlfriend, who alerted them to Sameru and said that, contrary to her wishes,

he continued to call her every day. The investigators learned that Sameru owned a maroon four-door car that is consistent with L.T.'s description and with a car captured by a nearby surveillance video-camera around the time of the 911 calls. The investigators also learned that Sameru's cell phone was in the area of the crime around the time of the 911 calls, even though he lived in Minneapolis.

The state filed criminal charges against Sameru in February 2014 and later amended the complaint twice. In the second amended complaint, the state charged Sameru with attempted second-degree murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2012), and first-degree assault, in violation of Minn. Stat. § 609.221, subd. 1 (2012). In September 2014, after a rule 20 competency evaluation, the district court found that Sameru was incompetent to stand trial. In December 2014, Sameru was civilly committed. In December 2018, after an evaluation determined that Sameru's competency had been restored, the district court reinstated the criminal charges.

By that time, L.T. no longer was available to testify because she had passed away. In January 2020, Sameru moved to suppress four statements previously made by L.T.: the two 911 calls and two statements she made to police officers in investigative interviews on the evening of the incident and the following day. Sameru argued that all four statements were inadmissible under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The state conceded that the two statements L.T. gave to police officers in investigative interviews were inadmissible, but the state opposed Sameru's motion with respect to the 911 calls. The district court denied Sameru's motion to the extent he sought to suppress evidence of the 911 calls.

The case was tried to a jury on five days in March 2020. The state introduced audio-recordings and transcripts of L.T.'s two 911 calls.

*Sameru*, No. A21-0911, 2022 WL 2297269, at *1-2.

The only issue raised on Sameru's appeal before the Minnesota Court of Appeals was that the district court erred by denying his motion to suppress evidence of the two 911 calls, on the ground that their admission violated his rights under the Confrontation Clause. *Id.* at *2. In this regard, the Minnesota Court of Appeals held as follows:

3

The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause prohibits the admission of a prior testimonial statement of a person who does not testify at trial unless the person is unavailable for trial and the defendant had a prior opportunity to cross-examine the person. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). But this rule of prohibition applies only to statements that are testimonial in nature; if a prior statement is nontestimonial in nature, the person who made the statement is not a "witness" for purposes of the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821 (2006). Accordingly, the admissibility of a prior statement under the Confrontation Clause depends on whether a statement is testimonial or nontestimonial in nature. *Id.* If a prior statement is testimonial in nature, the statement is inadmissible for purposes of the Confrontation Clause; but if a prior statement is nontestimonial in nature, the statement is not inadmissible for purposes of the Confrontation Clause. *Id.*

Statements made to police officers and other law-enforcement personnel may be either testimonial or nontestimonial. *Id.* at 822. Such a statement is deemed nontestimonial if it was "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* On the other hand, such a statement is deemed testimonial if "the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* This court applies a de novo standard of review to a district court's decision to admit a statement despite an objection based on the Confrontation Clause. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006).

This case concerns the admissibility of statements made not in a formal interrogation but in 911 calls. Both the United States Supreme Court and the Minnesota Supreme Court have considered the admissibility of audio-recordings of 911 calls. In *Davis*, a woman called 911 to report that Davis was assaulting her in her home. 547 U.S. at 817-18. The 911 call began while Davis was present in the home. *Id.* The Court concluded that the statements made by the woman while Davis was still in the home were nontestimonial in nature, and thus admissible, because their primary purpose was to assist police in responding to an ongoing emergency. *Id.* at 828-29. The Court reached that conclusion because the 911 caller was "speaking about events as they were actually happening, rather than 'describ[ing] past events' "; the caller was facing an ongoing emergency; the "elicited statements were necessary to be able to resolve the present emergency, rather than simply to

4

learn ... what had happened in the past"; and the caller's statements were made frantically, not in a controlled environment similar to an interrogation at a police station. *Id.* at 827 (alteration in original) (quoting *Lilly v. Virginia*, 527 U. S. 116, 137 (1999) (plurality opinion)).

In *State v. Wright*, 726 N.W.2d 464 (Minn. 2007), two women called 911 to report that Wright had pointed a handgun at each of them and threatened them. *Id.* at 467-68. The women called 911 after Wright had left the apartment, but they expressed their fear that Wright might return to the home and harm them. *Id.* at 468. The 911 call continued until the 911 operator informed the women that police officers had apprehended Wright. *Id.* The Minnesota Supreme Court concluded that the women's statements were nontestimonial in nature, and thus admissible, because their primary purpose was to enable law enforcement to meet an ongoing emergency, which included the need to reassure the women that they were safe because Wright had been apprehended. *Id.* at 474-75.

In this case, the district court determined that L.T.'s statements in the 911 calls are nontestimonial in nature, and thus admissible, because there was an ongoing emergency. The district court reasoned that L.T. called 911 "to seek help for a person being assaulted" and that her statements were "necessary to resolve the emergency and enable a police response." Sameru contends that the district court erred on the ground that there was no ongoing emergency at the times of the 911 calls. He notes that both of L.T.'s 911 calls were made after the assault had occurred and after the attacker had driven away.

The district court's conclusion that L.T.'s 911 calls concerned an ongoing emergency is consistent with the applicable caselaw. L.T.'s 911 calls are similar to the 911 call in Davis in that L.T. spoke about a situation that was ongoing, her colloquy with the 911 operator was conducted for the purpose of resolving the ongoing situation, and she spoke frantically. *See* 547 U.S. at 827. Also, L.T.'s 911 calls are similar to the 911 call in Wright in that the suspect had fled. *See* 726 N.W.2d at 467-68, 474-75. Nonetheless, as in Wright, the emergency was ongoing. The ongoing emergency in this case was A.A.'s need for medical attention. The need to provide medical treatment to a crime victim may be an ongoing emergency for purposes of the Confrontation Clause. In *State v. Warsame*, 735 N.W.2d 684 (Minn. 2007), a woman told a police officer that her boyfriend had just "beat [her] up," and the officer observed that the woman had physical injuries and was distraught. *Id.* at 687. The woman made additional statements to the officer in response to his questions. *Id.* at 687-88. The supreme court determined that the woman's statements were nontestimonial in nature, and thus

5

admissible, because they were made for the purposes of resolving an ongoing emergency. *Id.* at 693. The supreme court reasoned as follows:

> As first responders to emergencies, police are often required to assess a party's injuries and determine whether those injuries must be immediately addressed and whether the party requires additional assistance from paramedics or other health care professionals. In order to make that assessment, officers must inevitably learn the circumstances by which the party was injured, and if the circumstances of the questions and answers objectively indicate that gaining such information is the primary purpose of the interrogation, then the party's statements are nontestimonial.

*Id.*

The rationale of *Warsame* applies with full force to this case. L.T. called 911 for the primary purpose of prompting first responders to find A.A. and give him emergency assistance. In the first 911 call, L.T. asked the 911 operator to send officers because she was concerned about a person who apparently had been beaten. In the second 911 call, L.T. provided the 911 operator with specific information about A.A.'s location so that emergency responders could find him. Both 911 calls ended when the 911 operator informed L.T. that emergency assistance was on its way or was at the scene. The circumstances are properly deemed an ongoing emergency even though L.T. was not the person who required emergency assistance.

Sameru also contends, in the alternative, that the district court erred by admitting the entire audio-recording of each 911 call. He asserts that at least some portions of the 911 calls are testimonial in nature, and he contends that the district court should have admitted only the nontestimonial portions and ordered redactions of the testimonial portions. There is some support in the caselaw for the presentation of evidence in such a manner. In *Davis*, the Court acknowledged the possibility that a 911 call that begins with nontestimonial statements could "evolve into testimonial statements," and the Court suggested that a trial court, "[t]hrough in limine procedure," could "redact or exclude the portions of any statement that have become testimonial." *See* 547 U.S. at 828-29 (quotation omitted). But Sameru did not ask the district court to redact any portions of the audio-recordings or transcripts of L.T.'s 911 calls. The absence of such a request denied the state the opportunity to address the issue in the district court and denied the district court the opportunity to rule on the issue. Thus, this court will not consider the issue for the first time on appeal. *See State v. Sorenson*, 441 N.W.2d 455, 457 (Minn. 1989); *State ex rel. Rasmussen v. Tahash*, 141 N.W.2d 3, 13-14

(Minn. 1965); *State v. Lieberg*, 553 N.W.2d 51, 56 (Minn. App. 1996); *State v. Brunes*, 373 N.W.2d 381, 386 (Minn. App. 1985), *rev. denied* (Minn. Oct. 11, 1985).

In sum, L.T.'s 911 calls are nontestimonial in nature, which means that their admission into evidence did not violate Sameru's rights under the Confrontation Clause. Thus, the district court did not err by denying Sameru's motion to suppress evidence of statements made by L.T. during the 911 calls.

*Id.* at *2-4.

### C.   Present Petition

Sameru argues in his Petition that the admission of the two 911 calls violated his right to confrontation because the witness who made the calls did not testify at trial and he did not have the chance to cross-examine the witness before trial. (Dkt. 1 at 5.) Sameru went on to assert that the 911 calls were made after an assault occurred and after the attacker had driven away, and not during an emergency; at least some unidentified portions of the 911 calls were testimonial in nature and should have been redacted; and that the caller made identical or nearly identical statements to police, as contained in the 911 calls, that even the State conceded were inadmissible under the Confrontation Clause. (Dkt. 1 at 5.)

### D.   Respondent's Motion to Dismiss

Respondent brought a Motion to Dismiss, arguing that the court of appeals correctly articulated the well-established standard for assessing Sameru's claim, analyzing Supreme Court caselaw interpreting the Confrontation Clause, especially as it pertained to the distinction between testimonial and nontestimonial statements. (Dkt. 11 at 8.) According to Respondent, the state courts reasonably concluded that the two 911

calls at issue involved an ongoing emergency, and thus each statement was nontestimonial, and the state court's determination of the issue was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. (*Id.*)

Sameru argues in opposition that at least some unidentified portions of the 911 calls were testimonial in nature and should have been redacted; and that the caller made identical or nearly identical statements to police as those contained in the 911 calls, and those statements to police were considered inadmissible. (Dkt. 14 at 1.) Sameru contends that L.T.'s statements did not conclusively identify Sameru or his vehicle, but nevertheless were prejudicial simply because he owned a popularly owned vehicle identified by L.T., which became the focus of the investigation, so much so that his unidentified alibi was ignored and not investigated. (*Id.* at 2.)

## II.  LEGAL STANDARD

A federal court's review of habeas corpus petitions filed by state prisoners is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Habeas relief under § 2254 is warranted in three circumstances: (1) when a state court decision was contrary to clearly established federal law, (2) when a state court decision involved an unreasonable application of clearly established federal law, or (3) when a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C § 2254(d)(1), (2). Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court's

review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-82 (2011).

A federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). The "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (marks and citation omitted). Under § 2254(d), a state court decision is "contrary to" the Supreme Court's precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Engesser v. Dooley*, 457 F.3d 731, 735-36 (8th Cir. 2006). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. In such situations, the court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Under this standard, courts "must deny a writ—even if [they]

9

disagree with the state court's decision—so long as that decision is reasonable in view of all the circumstances." *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001) (citing *Williams*, 529 U.S. at 409-13). "To the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." *Atley v. Ault*, 191 F.3d 865, 872 (8th Cir. 1999) (citation omitted).

In addition, when reviewing a state court decision, a federal habeas court "presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)). This deference applies to factual determinations made by the state trial and appellate courts. *See Sumner v. Mata*, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

### III.   ANALYSIS

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004); *Davis v. Washington*, 547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses' against the accused, *i.e.*, those who 'bear testimony.'" *Crawford*, 541 U.S. at 51 (citation omitted); *see also*

*Davis*, 547 U.S. at 823-24. "'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (marks and citation omitted). The *Davis* court explained:

> A critical portion of [*Crawford*'s] holding . . . is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

*Davis*, 547 U.S. at 821 (citation omitted); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) (a statement is "testimonial" if it was made for an "evidentiary purpose" and "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" (marks and citation omitted)). Therefore, nontestimonial statements do not implicate the Confrontation Clause. *Giles v. California*, 554 U.S. 353, 376 (2008). Statements "are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822; *see also Michigan v. Bryant*, 562 U.S. 344, 370 (2011) ("[S]tatements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation."). This includes admitting a 911 call where the recorded statements in response to an interrogation were made during an ongoing emergency. *See Davis*, 547 U.S. at 828 (addressing whether the admission of statements made by a victim of a domestic assault in a 911 call violated the Confrontation Clause). Indeed, in

applying the definition for testimony given in *Crawford*—"a solemn declaration or affirmation made for the purpose of establishing or proving some fact"—the Supreme Court in *Davis* held that statements made in response to a police dispatcher's questions during a 911 call were not designed primarily to prove some past fact, and were thus non-testimonial. *Id.* at 824-28 (quoting *Crawford*, 541 U.S. at 51).

In assessing whether a statement is testimonial, a court must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Bryant*, 562 U.S. at 359.  Such circumstances include whether the statements were made at the scene of a crime and whether an emergency was ongoing. *Id.* at 360. The Court in *Bryant* reiterated the rule in *Davis* that statements made to police pursuant to police interrogation are nontestimonial if those statements, objectively evaluated, were made for the primary purpose of aiding the police in responding to an ongoing emergency. *Id.* at 354-55.  Statements for the purpose of aiding police in addressing an ongoing emergency are statements focused on "end[ing] a threatening situation." *Id.* at 357.  When ascertaining whether an emergency was ongoing involves considering matters such as whether the threat was directed solely to the victim and was neutralized, or whether there was a continuing threat to the public; the medical condition of the victim; and the degree of formality in the encounter between the victim and police. *Id.* at 363-66.

In addition, "the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." *Id.* at 367.  "The existence of an emergency or the parties' perception that an emergency is ongoing is

among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial. . . ." *Id.* at 370. "If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause." *Id.* at 361 n.8.

As stated previously, a "state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court reaches the opposite result in a case involving facts that are materially indistinguishable from relevant Supreme Court precedent." *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020). Here, the trial court and Minnesota Court of Appeals considered and applied the Supreme Court's decisions in *Crawford* and *Davis* when considering Sameru's Confrontation Clause challenge with respect to the admission of the 911 calls into evidence at trial even though L.T. was deceased. As part of their analysis regarding whether the statements during the 911 calls were nontestimonial in nature, thereby not implicating the Confrontation Clause, the state courts looked at whether elicited statements were in response to an ongoing emergency. *See Sameru*, 2022 WL 2297269, at *3. This is consistent with Supreme Court precedent finding that nontestimonial statements are made over the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *See, e.g., Davis*, 547 U.S. at 822 (finding that statements "are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the

13

interrogation is to enable police assistance to meet an ongoing emergency"); *see also Bryant*, 562 U.S. at 370 ("[S]tatements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.").

Further, as noted by the state courts, an ongoing emergency does not only include an ongoing attack, but it can also include an ongoing threat to the health of Sameru's alleged victim. *See Sameru*, 2022 WL 2297269, at *3 ("The ongoing emergency in this case was A.A.'s need for medical attention. The need to provide medical treatment to a crime victim may be an ongoing emergency for purposes of the Confrontation Clause."). This too is consistent with the Supreme Court's decision in *Bryant* where the Supreme Court noted that a court could consider the medical condition of the victim when ascertaining whether an emergency was ongoing and whether the statements focused on ending a threatening situation, when determining whether the statements were testimonial for the purposes of the Confrontation Clause. *Bryant*, 562 U.S. at 356-57, 363-66. For all of these reasons, the Court finds that state court decisions are not contrary to clearly established federal law.

The Court next addresses whether the state court decision involved an unreasonable application of clearly established federal law. "A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Chavez v. Weber*, 497 F.3d 796, 801 (8th Cir. 2007) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "It is not enough for [the federal

14

court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Id.* (quoting *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir.), *cert. denied*, 549 U.S. 835 (2006)). While the attack had finished by the time L.T. called 911 initially, she informed the operator that a resident had been attacked violently and asked that the 911 operator send officers because she was concerned about the victim after seeing him being assaulted.[1] The purpose of this call was not for evidentiary purposes, like her subsequent statements to law enforcement, but were addressing an ongoing emergency pertaining to the well-being of the victim of an apparent assault. *See Bryant*, 562 U.S. at 356-57, 363-66. Similarly, the second 911 call by L.T. confirmed to law enforcement, who could not find the victim after the first call, that indeed the victim needed medical attention, as she had seen him stagger and fall to the ground.[2] As such, the Court finds

---

[1] The Court notes that Sameru, despite his burden, has not challenged the factual determination by the state courts with respect to the 911 calls and other facts at issue and therefore, the Court presumes that the state court's factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1)).

[2] Sameru argues that portions of the 911 call should have been redacted. (Dkt. 14 at 3.) Not only does he not identify which portions should be redacted, but he failed to raise this issue to the trial court, so the substance of the argument was never considered on appeal. *Sameru*, 2022 WL 2297269, at *4. "A federal claim has not been fairly presented to the state courts when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural law." *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). Similarly, Sameru makes what appears to be several conclusory statements in his opposition (for the first time) regarding how his defense was prejudiced, including a failure by his counsel to raise an alibi defense, the failure by his counsel to conduct DNA testing, and that he was hampered by being deemed incompetent for a period of time. (Dkt. 14 at 2.) These are not claims asserted in his Petition and do not appear to have been raised on appeal. An application for a writ of habeas corpus will only be granted if

that the state court decisions that the calls were nontestimonial in nature, which means that their admission into evidence did not violate Sameru's rights under the Confrontation Clause, did not involve an unreasonable application of clearly established federal law.

For all of these reasons, the Motion should be granted and the Petition Denied.

### IV.     CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Flieger v. Delo*, 16 F.3d 878, 882 83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). In this case, it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Sameru's current habeas corpus petition differently than it is being

---

"the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). In conformance with the principles of comity and federalism, the exhaustion doctrine requires state courts to have a "full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), where "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). Thus, "a prisoner must fairly present his federal constitutional claims to the highest available state court, (in Minnesota, the Minnesota Supreme Court), before seeking relief in federal court." *Fraction v. Minnesota*, 678 F. Supp. 2d 908, 916 (D. Minn. 2008).

16

treated here. Sameru has not identified, and this Court cannot discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. It is therefore recommended that Sameru should not be granted a COA in this case.

## V.     RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.     Teshome Sok Sameru's Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. 1) be **DENIED**;

2.     Respondent's Motion to Dismiss (Dkt. 10) be **GRANTED**; and

3.     That no Certificate of Appealability be issued to Petitioner.

DATED:  November 13, 2023            *s/Elizabeth Cowan Wright*
                                     ELIZABETH COWAN WRIGHT
                                     United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).